

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-CR-81 |
| ) | |
| SUSAN ALCANTARA, ) | Hon. Leonie M. Brinkema |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The United States and the defendant, SUSAN ALCANTARA, stipulate that the allegations in the Criminal Information and the following facts are true and correct. The United States and ALCANTARA further stipulate that had the matter gone to trial, the United States would have proven the allegations in the Criminal Information and the following facts beyond a reasonable doubt with admissible and credible evidence.

1. From at least in or around January 2017 and continuing to at least in or around June 2019, Physician-1, with the assistance of ALCANTARA and others, ran a prescription "pill mill" in the Eastern District of Virginia, at which so-called "patients," many of whom were actually cash-paying customers, could obtain medically unnecessary prescriptions, including Schedule II controlled substances, outside the usual course of professional practice.

2. From at least in or around January 2017 and continuing to at least in or around June 2019, Physician-1 held a Commonwealth of Virginia medical license and Drug Enforcement Administration ("DEA") registration number. Physician-1 practiced medicine at an addiction/pain treatment clinic and an OBGYN practice, which both operated in the same location in the Eastern District of Virginia (collectively, "The Medical Practices").

3. ALCANTARA was employed as a medical assistant and receptionist at The

Medical Practices from in or around 2016 to in or around June 2019. ALCANTARA worked at the front desk and was responsible for collecting lab specimens from patients and customers. ALCANTARA was also a patient of Physician-1 since at least in or around 2016.

4. ALCANTARA has never been licensed to practice medicine in the Commonwealth of Virginia, or elsewhere. At no point was ALCANTARA ever legally authorized to prescribe or dispense scheduled medications, including Schedule II controlled substances, to anyone.

5. From at least in or around January 2017 continuing to at least in or around June 2019, ALCANTARA was suffering from an opioid addiction. Physician-1 was aware of ALCANTARA's addiction problems, but nonetheless prescribed Schedule II controlled substances to ALCANTARA and others in ways that caused dependence and addiction. Physician-1 issued prescriptions for Schedule II controlled substances in dosages and/or in combinations dangerous to the health and safety of patients, including opioids in excessive and escalating amounts, rather than providing alternative means of addiction treatment.

6. From at least in or around January 2017 and continuing to in or around June 2019, ALCANTARA filled fraudulent prescriptions for Schedule II opioid prescriptions in her own name and the names of at least four unwitting individuals, without lawful authority, at various pharmacies located in the Eastern District of Virginia. The prescriptions were issued using Physician-1's medical credentials and DEA registration number. None of the four unwitting individuals were ever patients of Physician-1, nor did they ever receive the Schedule II pills that were dispensed and provided to ALCANTARA pursuant to the fraudulent prescriptions.

7. Despite being aware of ALCANTARA's opioid addiction, Physician-1 provided many of the prescriptions to ALCANTARA that were written in the names of individuals that

Physician-1 never medically examined. These individuals had never given consent to Physician-1 that their names could be used to dispense those prescriptions.

8. From at least in or around January 2017 continuing to in or around June 2019, ALCANTARA filled or caused to be filled at least 9,134 Schedule II pills containing oxycodone, oxycodone-acetaminophen, and hydrocodone-acetaminophen, at pharmacies located in the Eastern District of Virginia, as summarized in the table below. For example, on or about January 27, 2019, in the Eastern District of Virginia, ALCANTARA fraudulently filled or caused to be filled a prescription for 90 oxycodone 15 mg pills in her name and a prescription for 90 oxycodone-acetaminophen 10 mg pills in C.A.'s name. ALCANTARA knew that C.A. was not medically examined by Physician-1, did not receive any of the pills, and that both prescriptions were issued by Physician-1 outside the course of professional practice.

| Name on Prescription | Time Period | Total # of Schedule II Pills |
|---|---|---|
| ALCANTARA | Jan. 2017 – May 2019 | 3,204 |
| S.T. | Jan. 2017 – May 2019 | 2,650 |
| C.A. | Jan. 2017 – May 2019 | 1,860 |
| G.A. | Aug. 2017 – June 2019 | 1,240 |
| M.C. | April 2019 – May 2019 | 180 |

9. From at least in or about January 2017 and continuing to in or around May 2018, ALCANTARA fraudulently caused the Virginia Medicaid health care benefit program to pay for at least some of the 240 oxycodone-acetaminophen and 14 hydrocodone-acetaminophen pills in her own name, as well as in the name of S.T. without S.T.'s knowledge or consent, using Physician-1's medical credentials and DEA registration number.

10. S.T. had health insurance through Medicaid, a public health care benefit program

as defined by Title 18, United States Code, Section 24(b). Medicaid paid for some of S.T.'s Schedule II opioid prescriptions, which were fraudulently obtained by ALCANTARA at pharmacies in the Eastern District of Virginia. Had the pharmacies been aware that these prescriptions were fraudulently issued in the name of S.T., the pharmacies would have never dispensed the prescriptions. But for the actions of ALCTANTARA, the pharmacies would not have submitted these fraudulent claims to Medicaid for payment.

11. For example, on or about January 31, 2017, in the Eastern District of Virginia, ALCANTARA fraudulently filled or caused to be filled a prescription for 30 oxycodone-acetaminophen 10 mg pills in the name of S.T. ALCANTARA's actions caused the Virginia Medicaid health care benefit program to pay for this fraudulent prescription. ALCANTARA knew that S.T. was not medically examined by Physician-1, did not receive any of the pills, and that the prescription was issued by Physician-1 outside the usual course of professional practice.

12. During the relevant time period, including in at least October 2018, ALCANTARA also aided and abetted (*i.e.*, facilitated) the filling and dispensing of fraudulent prescriptions for at least one other individual involved in the scheme. For example, when pharmacies located in the Eastern District of Virginia called The Medical Practices to verify the legitimacy of certain prescriptions issued in the name of that individual, ALCANTARA verified the prescriptions were accurate. However, ALCANTARA knew that the prescriptions were fraudulent and/or were issued outside the usual course of professional practice.

13. This Statement of Facts includes those facts necessary to support the plea agreement between ALCANTARA and the United States. It does not include each and every fact known to ALCANTARA or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding ALCANTARA's case.

14. The acts taken by ALCANTARA in furtherance of the offenses charged in this case, including the acts described above, were done willfully, knowingly and with specific intent to violate the law, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Raj Parekh
Monika Moore
Assistant United States Attorneys

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between the United States and me, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 3-30-20

_____
SUSAN ALCANTARA
Defendant

Defense Counsel Signatures: I, Shannon S. Quill, am counsel for the defendant (SUSAN ALCANTARA), in this case. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Date: 3/30/20

_____
Shannon S. Quill, Esq.
Counsel for the Defendant

5